UNITED STATES DISTRICT COURT    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 23-9933-JFW(PVCx)** | Date:  January 24, 2024 |
| Title: | Yaquelin Tapia -*v*- National Dentex Labs LLC, et al. | |

**PRESENT:  HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING PLAINTIFF'S MOTION FOR ORDER REMANDING ACTION TO STATE COURT [filed 12/22/23; Docket No. 26]

On December 22, 2023, Plaintiff Yaquelin Tapia ("Plaintiff") filed a Motion for Order Remanding Action to State Court ("Motion").  On December 29 2023, Defendant National Dentex Labs, LLC ("Defendant") filed its Opposition.  On January 8, 2024, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's January 22, 2024 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

I.  **Factual and Procedural Background**

On October 20, 2023, Plaintiff, on behalf of herself and all others similarly situated, filed a Class Action Complaint ("Complaint") against Defendant in Los Angeles Superior Court, alleging causes of action for: (1) Failure to Pay All Minimum Wages; (2) Failure to Pay All Overtime Wages; (3) Failure to Provide Rest Periods and Pay Missed Rest Period Premiums; (4) Failure to Provide Meal Periods and Pay Missed Meal Period Premiums; (5) Failure to Maintain Accurate Employment Records; (6) Failure to Pay Wages Timely During Employment; (7) Failure to Pay All Wages Earned and Unpaid at Separation; and (8) Failure to Indemnify All Necessary Business Expenditures; (9) Failure to Furnish Accurate Itemized Wage Statements; and (10) Violation of California's Unfair Competition Law, California Business & Professions Code, §§ 17200-17210.

On November 22, 2023, Defendant removed this action, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA").  On December 26, 2023, Plaintiff filed a First Amended Complaint ("FAC"), which added a cause of action for penalties pursuant to the California Labor Code Private Attorneys general Act of 2004 ("PAGA") for violations of the California Labor Code, §§ 142.3, 201, 202, 203, 204, 210, 226, 226.3,

226.7, 256, 510, 512, 1173, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 1199, 2802, 2804, and other provisions.

In her Motion, Plaintiff argues that the amount in controversy does not exceed $5,000,000, and moves to remand this action to Los Angeles Superior Court. In its Opposition, Defendant argues that it has met its burden of demonstrating that at least $5,000,000 is in controversy.

## II.   Legal Standard

### A.   Removal Jurisdiction

Federal courts are courts of limited jurisdiction. As a result, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In every federal case, the basis for federal jurisdiction must appear affirmatively from the record. *See Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted). Unless otherwise expressly provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court. 28 U.S.C. § 1441(a).

To remove an action to federal court under Section 1441(a), the removing defendant must demonstrate that original subject-matter jurisdiction lies in the federal courts. *Syngenta*, 537 U.S. at 33. In other words, the removing defendant bears the burden of establishing that removal is proper. *See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the longstanding, near-canonical rule that the burden on removal rests with the removing defendant).

### B.   CAFA Jurisdiction

Under CAFA, the Court has original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there is minimal diversity. 28 U.S.C. § 1332(d)(2). The general rule is that a removing defendant's well-pleaded amount in controversy allegations should be accepted when not contested by the plaintiff or questioned by the court. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (holding that in determining the amount in controversy, courts first look to the complaint).

A plaintiff may either facially or factually contest the defendant's jurisdictional allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964-65 (9th Cir. 2020). Where a plaintiff mounts a facial attack, which accepts the allegations as true but asserts that they are insufficient on their face to invoke federal jurisdiction, the court need only determine whether the defendant has plausibly alleged the facts necessary to support removal. *Id.* at 959, 964-65 (*quoting Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). Where a plaintiff mounts a factual attack, the court must determine by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Unlike a facial attack, a factual attack challenges the underlying factual bases of the jurisdictional allegations. *Salter*, 974 F.3d at 964. A plaintiff need not introduce evidence of its

own to mount a factual attack.  *Harris*, 980 F.3d at 700.  A factual attack need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence.  *Id.*

The preponderance of the evidence standard means that the defendant must provide evidence establishing that it is more likely than not that the amount in controversy meets or exceeds the jurisdictional threshold.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  The defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum.  *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir. 1992).  In addition to the contents of the notice of removal, the Court may consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal, such as affidavits or declarations.  *Ibarra*, 775 F.3d at 1197; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  There is no presumption against removal jurisdiction in CAFA cases.  *Dart Cherokee*, 574 U.S. at 89.

### III.  Discussion

In her Motion, Plaintiff argues that this case should be remanded because Defendant has failed to establish that the amount in controversy exceeds $5,000,000. In ruling on Plaintiff's Motion, the Court must first determine if Plaintiff's arguments constitute a facial or factual attack on Defendant's jurisdictional allegations.  *Salter*, 974 F.3d at 964-65.  Plaintiff argues that Defendant did not submit sufficient proof supporting its calculations of the amount in controversy, which constitutes a facial attack.  *Id*. at 961.  However, Plaintiff also objects to Defendant's assumed violation rates and argues that many of the assumptions made by Defendant are unreasonable and unsupported by evidence.  Specifically, Plaintiff objects as unreasonable and unsupported Defendant's assumptions that: (1) all Class Members experienced thirty minutes of unpaid time and thirty minutes of unpaid overtime for each and every shift; (2) all Class Members missed three meal periods per week for every work week; (3) all Class Members missed three rest periods per week for every work week; (4) all Class Members used their personal cell phones for business purposes ever single work week and were not reimbursed for that use, and the value of that use is $15.00 per month; (5) Defendant failed to pay one hundred percent of the Class Members who were terminated or resigned during the relevant time period the full amount of wages owed to them at termination or resignation; and (6) Defendant's wage statement violation rate was 100 percent.  By challenging the factual basis of the assumptions underlying Defendant's calculations, Plaintiff has mounted a factual attack.  *See, e.g., Harris*, 980 F.3d at 700 (finding that the plaintiff mounted a factual attack where the plaintiff contested the defendant's failure to demonstrate that all members of the Hourly Employee Class worked shifts long enough to qualify for meal and rest periods).  Plaintiff is not required to put forward her own evidence to mount a factual attack and may do so by making a reasoned argument challenging defendant's assumptions.  *Id*.  As a result, this Court must determine whether Defendant has satisfied its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

In demonstrating that the amount in controversy exceeds $5,000,000, a defendant may rely on reasonable assumptions.  *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019).  An assumption is reasonable when it is founded on the allegations of the complaint (*Id.* at 925), or has some reasonable ground underlying it.  *Ibarra*, 775 F.3d at 1199.  However, a defendant may not pull assumptions from thin air or establish removal jurisdiction by mere speculation and conjecture.  *Id.* at 1197 and 1199.

In this case, Defendant submitted the Declaration of Nicole Milnthorpe with its Notice of Removal and a second Declaration of Nicole Milnthorpe with its Opposition to Plaintiff's Motion. The declarations of Nicole Milnthorpe ("Milnthorpe"), the Chief Financial Officer ("CFO") of Defendant, fail to discuss how the amount in controversy was calculated or the basis for the assumptions made in calculating the amount in controversy. Instead, in the Notice of Removal, Defendant simply calculated the amount in controversy with respect to Plaintiff's unpaid wages and overtime violations claims by "assuming each class member is owed 60 minutes of unpaid wages per day (30 of those minutes calculated at the average hourly rate and the other 30 minutes calculated at the average overtime rate)." Notice of Removal, ¶ 35. Defendant also assumed, without any factual support, "a violation rate of three uncompensated, non-compliant meal periods every week" and "a violation rate of three uncompensated, non-compliant rest periods every week." Notice of Removal, ¶¶ 41 and 48. In addition, Defendant assumed a one hundred percent violation rate with respect to wage statement violations and waiting time penalties and that one hundred percent of Class Members would seek reimbursement for use of their personal cell phones as an unreimbursed business expense for every work week during the Class Period. Notice of Removal, ¶¶ 52-65. In her declarations, Milnthorpe merely states that for the period from October 20, 2019 to November 3, 2023: (1) Defendant employed approximately 222 non-exempt employees in California; (2) 108 of these California non-exempt employees separated from employment with Defendant; (3) the average hourly rate of pay for Defendants' California non-exempt employees was $20.23 and the average hourly overtime rate of pay was $30.34; and (4) Defendant's California non-exempt employees collectively worked 21,758 workweeks and 10,879 bi-weekly pay periods. Declaration of Nicole Milnthorpe (Docket No. 1-1) ("Milnthorpe Decl."), ¶¶ 9-11; Supplemental Declaration of Nicole Milnthorpe (Docket No. 30-1) ("Supp. Milnthorpe Decl."), ¶¶ 5 and 9-10. Milnthorpe also states that for the period from October 20, 2019 to November 11, 2023: (1) Plaintiff worked 410 shifts, including 275 shifts that were over eight hours, 377 shifts between seven hours and thirty minutes and eight hours, and 407 shifts that were over three hours and thirty minutes; and (2) Plaintiff was scheduled to work five shifts per workweek and that hourly employees are generally full-time employees who work five shifts per week. Supp. Majeski Decl., ¶¶ 6-7. Milnthorpe also states that she has access to payroll, timekeeping, and personnel records of Defendant's employees in California, including Plaintiff, and that she reviewed those records in connection with her declarations. Milnthorpe Decl., ¶ 3; Supp. Milnthorpe Decl., ¶ 3.

The Court concludes that this evidence fails to demonstrate that Defendant's calculations and assumptions regarding the amount in controversy are reasonable. In her Complaint, Plaintiff defines the Class as "[a]ll individuals who are or were employed by Defendants as non-exempt employees in California during the Class Period," and the "Class Period" is defined as "the period from four years prior to the filing of this action and continuing into the present and ongoing."[1] Complaint, ¶¶ 2-3. However, with respect to the purported minimum wage and overtime violations, although Plaintiff alleges that Defendant had "payroll policies and practices that unfairly rounded employees' wages to the detriment of Class Members," Plaintiff also alleged that Class Members only "suffered periodic shortages in the hours for which they were compensated" and were

---

[1] Although Plaintiff has filed a FAC, because the Court considers "damages that are claimed at the time the case is removed by the defendant," and the original Complaint was the operative pleading at the time this action was removed to this Court, the Court will consider the allegations in the original Complaint. *See Chavez v. JPMorgan Chase Co.*, 888 F.3d 413, 417 (9th Cir. 2018). In addition, the Court concludes that nothing alleged by Plaintiff in the FAC would change the Court's ruling.

"periodically shorted the full amount of overtime pay." Complaint, ¶¶ 24 and 33. With respect to purported meal and rest break violations, Plaintiff alleges that Defendant "periodically" denied the legally-required meal or rest break. Complaint, ¶¶ 38 and 46. In addition, Plaintiff's wage statement violation claim only relates to the wage statements for Class Members for the pay periods where Class Members experienced one of the purportedly "periodic" shortages in minimum and overtime wages and meal and rest period premiums. Complaint, ¶¶ 52, 54, and 60. Finally, Plaintiff's business expense reimbursement claim does not allege that all Class Members incurred business expenses that were not reimbursed. Instead, Plaintiff simply alleges that Defendant "failed to fully reimburse the Class Members for necessary expenditures incurred." Complaint, ¶ 58.

Although Plaintiff's allegations might support the assumption that all Class Members suffered injury during the putative Class Period, they do not support Defendant's assumptions that every Class Member was uncompensated for sixty minutes of unpaid wages per day of the Class Period, missed at least three meal breaks and three rest breaks every week of the Class Period, or that Defendant violated the California Labor Code with respect to wage statements, waiting times, and business expense reimbursement one hundred percent of the time. Defendant argues that its assumed violation rates are reasonable because Plaintiff alleges "policies and practices" of Labor Code violations. However, as the Honorable Jesus Bernal recently stated:

> Defendants contend that their assumptions are reasonable given Plaintiff's use of the term "policy and practice" when describing alleged minimum wage and overtime violations. In support of this position, Defendants cite to a string of cases without explaining how they relate to their arguments. The Court has little doubt that some courts have accepted a defendant's specific numerical assumption in a case in which the plaintiff alleged a policy, pattern and/or practice of illegal conduct . . . [T]he problem is not necessarily that Defendants picked a violation rate that is too high. The problem is that the Court cannot discern why it picked that number at all, because Defendants never adequately explain their chain of reasoning and certainly provide no real evidence in support of it. As far as the Court can tell, Defendants simply picked that violation rate because it might seem low enough to be facially "reasonable" and still high enough to keep them on track to hit their magic number of $5,000,000. This approach amounts to little more than plucking a violation rate out of the air and calling it "reasonable"— a wasteful and silly, but routine, exercise in mathematical fantasyland.

*Peters v. TA Operating LLC*, 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023) (internal citations omitted); *see also Gonzalez v. Randstand Professionals US, LLC*, 2022 WL 17081053, *3-*4 (C.D. Cal. Nov. 18, 2022) (holding that "[i]f one is going to assume a violation rate based on vague language in a complaint, then there is no basis for assuming that a 100% or 50% or even 25% violation rate is any more or less reasonable than a violation rate of once per week or once per month") (internal quotation omitted); *Duran v. Allegis Global Solutions, Inc.*, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021) (holding that the defendant's "assumption of a once-per-week incidence of overtime and minimum wage, and meal and rest break violations is even more arbitrary. It would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter. [Defendant] again did not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the complaint that might do so").

One example of the arbitrariness of Defendant's assumptions in this case can be seen from the violation rates chosen by Defendant with respect to meal and rest breaks. In the Notice of

Removal, Defendant argues that an assumption that each Class Member missed three meal breaks and three rest breaks each week of the Class Period is reasonable. In its Opposition, Defendant argues that although the assumption of three missed meal breaks and three missed rest breaks may be reasonable, it is equally reasonable to assume that each Class Member missed only two meal breaks and two rest breaks each week of the Class Period. *See, e.g.,* Defendant's Opposition, 13:9-27 (arguing that "an assumed violation rate of 60% [for missed meal and rest breaks] is conservative and reasonable . . . However, even if the Court were to consider [only] two meal periods and rest periods a week, the amount in controversy would still easily meet the $5,000,000 jurisdictional threshold"). However, it appears that the only reason why either of these assumptions is "reasonable" is that both assumptions conveniently support Defendant's argument that the amount in controversy is in excess of the "magic number" of $5,000,000.

As a result, the Court concludes that there is no factual or evidentiary basis for Defendant's assumptions, and that all of Defendant's calculations rest on assumptions that are neither supported by evidence nor based on the allegations of the Complaint.[2] *See, e.g., Salazar v. Johnson and Johnson Consumer Inc.*, 2018 WL 4560683 (C.D. Cal. Sept. 19, 2018) (remanding action and finding that "Defendant sets forth no facts supporting their assumed violation rate of 20% (or even 5%), nor do Plaintiffs allegations of periodic violations point to this conclusion. This arbitrary assumption does not permit the Court to find that Defendants have established by a preponderance of the evidence the amount in controversy for Plaintiffs meal and rests break claims"); *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600 (N.D. Cal. June 14, 2013) (holding that with respect to waiting time penalties, a defendant may "assume a 100% violation rate only where such an assumption is supported directly by, or reasonably inferred from, the allegations in the complaint"); *Duran*, 2021 WL 3281073 (holding that the defendant's "assumption of a 20% violation rate for the wage statement claims is equally unavailing" as the defendant's assumptions on other wage and hour violations).

Moreover, a district court does not need to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. *See Harris*, 980 F.3d at 701; *see also Marquez v. Southwire Co., LLC*, 2021 WL 2042727, *5 (C.D. Cal. May 21, 2021) (holding that the court will not propose a reasonable violation rate for the plaintiff's overtime and minimum wage claims, because "the court need only 'weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own'") (quoting Harris, 980 F.3d at 701). The purpose of holding Defendant to the preponderance of the evidence standard in this context is "to ensure that CAFA's requirements are . . . tested by consideration of real evidence and the reality of what is at stake in the litigation." *Ibarra*, 775 F.3d at 1198. In this case, given Defendant's unsupported assumptions, the Court has no sense of "the reality of what is at stake" in this litigation. *Id.* Moreover, to the extent Defendant believes such reasoning is unfair, this Court concurs with the observation originally made by the Honorable George

---

[2] Defendant also includes attorneys' fees in calculating the amount in controversy, which is permitted when fees are authorized by statute. *See Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, because the calculations discussed above are flawed, the Court cannot address the reasonableness of the alleged attorneys' fees, which necessarily rest on these flawed calculations. *See, e.g., Vanegas v. DHL Express (USA), Inc.*, 2021 WL 1139743, at *4–5 (C.D. Cal. Mar. 24, 2021) (concluding that "Defendant has failed to meet its evidentiary burden regarding attorneys' fees for purposes of removal because, as noted above, Defendant's calculations of the class recovery are not adequately supported").

Wu:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement.  Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

*Toribio v. ITT Aerospace Controls LLC,* 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019) (concluding that "defendants in this type of litigation will either have to change their approach along the lines the Court has suggested above (take some discovery in the wealth of time CAFA affords to do so), the Ninth Circuit will have to reconsider *Ibarra* and tell district courts to accept whatever number a defendant can imagine, or the Supreme Court or (don't hold your breath) Congress will have to step in to clear up what has become a wasteful and silly, but routine, exercise in mathematical fantasyland"); *see also Peters*, 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023) (granting motion to remand and "agree[ing] with" Judge Wu's observation); *Gonzalez*, 2022 WL 17081053, at *4 ("contin[uing] to agree with" Judge Wu's observation).

      Accordingly, the Court concludes that Defendant has failed to demonstrate that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence.  *See, e.g., Marentes*, 2015 WL 756516, at *10 ("Because [defendant] fails to provide facts supporting the calculations, [defendant] has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000"); *see also Ibarra*, 775 F.3d at 1199 ("Because the complaint does not allege that [defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions").

## IV.    Conclusion

      For all the foregoing reasons, Plaintiff's Motion is **GRANTED**, and this action is **REMANDED** to Los Angeles Superior Court for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

      IT IS SO ORDERED.